**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KELI ANN D.,

                        Plaintiff,

        v.                                          1:23-CV-765
                                                        (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

KIRK & TEFF, LLP                          DREW A. CHISHOLM, ESQ.
Attorney for Plaintiff
10 Westbrook Lane
PO Box 4466
Kingston, New York 12402

U.S. SOCIAL SECURITY ADMIN.               FERGUS J. KAISER, ESQ.
OFFICE OF THE GENERAL COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

        Plaintiff, Keli Ann D., brought this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security that Plaintiff was not

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

disabled.   Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 12 & 14. For the reasons set forth below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted and Defendant's Motion be denied.

## I. RELEVANT BACKGROUND

### A.  Background

Plaintiff was born in 1964.  Dkt. No. 9, Admin. Tr. ("Tr."), p. 61.  Plaintiff reported completing twelfth grade, Tr. at p. 215, and she has past work experience as a customer service representative, a call quality auditor, and a dental assistant. Tr. at p. 204.  Plaintiff alleges disability based upon an anterior cervical discectomy fusion on the spine from C5 to C7, fibromyalgia, carpal tunnel syndrome, and anxiety.  Tr. at p. 214.  Plaintiff applied for disability and disability insurance benefits in December 2020. Tr. at p. 179.  She alleged a disability onset date of October 29, 2020. Tr. at p. 179. Plaintiff's application was initially denied on April 6, 2021, Tr. at p. 75, and the claim was subsequently denied upon reconsideration on July 26, 2021.  Tr. at p. 91.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 124-25. She appeared at a hearing before ALJ Dennis G. Katz, on September 29, 2022.  Tr. at pp. 32-60. On October 27, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 17-26.  On April 20, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-6.

**B. The ALJ's Decision**

In his decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that she had not engaged in substantial gainful activity since her alleged onset date.  Tr. at p. 19.  Second, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with stenosis, spondylosis, and radiculopathy; myofascial pain syndrome; right shoulder impingement syndrome; and bilateral carpal tunnel syndrome.  Tr. at p. 20.  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p 21.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") "to perform light exertion level work as defined in regulations in that she is able to sit for eight hours and stand and/or walk for eight hours during the course of an 8-hour work day" and that "[t]he claimant is able to lift and/or carry objects weighing 20 pounds and can frequently reach, handle, finger, and turn the neck."  Tr. at p. 21.  Fifth, the ALJ found that Plaintiff could perform her past relevant work as a call quality auditor.  Tr. at p. 26.  Sixth, the ALJ found that based upon Plaintiff's age, education, and functional abilities there were also other jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically work as a customer service clerk.  Tr. at p. 26.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at p. 26.

3

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff broadly asserts that the ALJ improperly analyzed her subjective complaints.  Upon review the Court disagrees.  Where the claimant's self-reported symptoms are more severe than the medical evidence alone supports, an ALJ must consider several factors to assess those subjective complaints.  *Fiedler v. Colvin*, 54 F. Supp. 3d 205, 217 (E.D.N.Y. 2014).  "These include: (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve

pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Id.* at 217-18 (citing 20 C.F.R. § 404.1529(c)(3)).

Plaintiff first argues that the ALJ engaged in an improper credibility analysis and ignored regulations relating to the alleged onset date ("AOD"). Particularly, Plaintiff argues that consideration of the AOD in connection with her receipt of unemployment benefits was improper. In support of this allegation, Plaintiff first references the ALJ's decision which states that rather than claiming an alleged onset date at the time of her cervical discectomy and fusion, she alleged disability as of October 29, 2020. Tr. at p. 22. The ALJ then states that the AOD roughly coincided with the period during which the Plaintiff began obtaining unemployment benefits. Tr. at p. 22. Plaintiff did in fact receive unemployment benefits from the fourth quarter of 2020 through the third quarter of 2021. Tr. at p. 199. These statements are best characterized as the ALJ stating facts in the record. As discussed below, to the extent the ALJ engaged in a credibility analysis based on these facts, he did not err in doing so.

The ALJ's decision in connection with the evidence of Plaintiff receiving unemployment benefits states "[a]lthough receipt of unemployment insurance benefits does not automatically preclude a finding of disability at Step 1 . . . it does tend to undermine the claimant's allegations that she has been 'unable' to work since the alleged onset date." Tr. at p. 24. First, the ALJ states that it "tends to" undermine the Plaintiff's claim. However, the ALJ did not rely solely on this evidence in determining that

Plaintiff is able to work.  Rather, the ALJ considered the record in its entirety, which included the evidence at issue here, but also included consideration of the other relevant factors laid out in 20 C.F.R. § 404.1529(c)(3).  The ALJ explicitly considered Plaintiff's daily activities which include doing light chores, preparing easy meals, driving, doing laundry, and shopping.  Tr. at p. 24.  The ALJ also considered the location, duration, frequency, and intensity of Plaintiff's pain, as well the fact that certain activities such as sitting for long periods aggravate the pain.  Tr. at p. 22.  Moreover, the ALJ considered the Plaintiff's use and the effectiveness of oral medication, steroid injections, and nerve blocks as well as surgical intervention to alleviate the pain.  Tr. at p. 23.

During his consideration of the above information, the ALJ discussed the Plaintiff's receipt of the unemployment benefits. "Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that [s]he was ready, willing, and able to work during the time period for which [s]he claims disability benefits as adverse factors in the ALJ's credibility determination." *Felix v. Astrue*, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012).  Where the Plaintiff's receipt of unemployment benefits is one part of the ALJ's consideration of the record rather than the dispositive basis for his decision, there is not legal error. *See Carol Ann T. v. Comm'r of Soc. Sec.*, 2021 WL 3165353, at *3 (N.D.N.Y. July 26, 2021).

Plaintiff appears to argue that the ALJ improperly drew negative inferences about the claimant's credibility at this point.  Yet, Plaintiff fails to highlight any portion of the

decision where the ALJ erroneously relied on this information. Receipt of unemployment benefits during the same period as a claimant is alleging disability is relevant to an ALJ's credibility determination, and there is no indication that the ALJ gave significant weight to this evidence. Therefore, the ALJ did not err in considering Plaintiff's receipt of unemployment benefits after the alleged onset date because it was just one of many considerations relevant to assessing Plaintiff's credibility.

Plaintiff also alleges that the ALJ erred by not giving proper weight to her unsuccessful attempts to work following her 2019 surgery. This claim, however, is without merit. An ALJ "is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citation omitted).

### B. ALJ's Duty to Adequately Explain Rationale

This Court does, however, agree with Plaintiff's assertion that the ALJ did not sufficiently explain his RFC determination. An ALJ has a legal obligation "to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence." *Calzada v. Astrue*, F. Supp. 2d 250, 269 (S.D.N.Y. 2010). Compliance with this obligation permits a reviewing court to "judge the adequacy of [the ALJ's] conclusions." *Rivera v. Sullivan*, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991). Where an ALJ fails to provide a rationale for a particular determination, the evidence in the record must permit a reviewing court to "glean the rationale of the ALJ's decision." *Monguer v. Heckler*, 722 F.2d 1033, 1040

2d cir 1983

(2d Cir. 1983).  Consequently, if a review of the record does not allow the reviewing court to understand the ALJ's reasoning, remand is warranted.  *See, e.g.*, *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 187 (E.D.N.Y. 2011) (remanding for ALJ to explain rationale more clearly).

Plaintiff first alleges that the ALJ's RFC determination was not supported by any medical opinion in the record and that the ALJ interpreted raw medical evidence. However, rather than the ALJ wrongly interpreting raw medical data, this Court believes the issue is better characterized as the ALJ's failure to adequately explain his determination.  An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole" and that finding need not "perfectly correspond with any of the opinions of the medical sources cited in his decision."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  In fact, it may be appropriate for an ALJ not to rely on any particular medical opinion where they offer conflicting opinions.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  But, as stated above, an ALJ is required to explain how he arrived at his decision.  *Calzada v. Astrue*, F. Supp. 2d at 269.

This Court finds the ALJ's decision regarding Plaintiff's manipulative limitations problematic.  In his decision, the ALJ states, "[s]he was still able to perform reaching, handling, and fingering despite her diagnosis – estimated by the undersigned to be 50% of the time during a typical workday when viewed in combination with her shoulder impairments."  Tr. at p. 23.  While the RFC determination does not need to perfectly

correspond with any of the medical opinions of record, it is unclear how the ALJ arrived at this 50% quantification.  Both state agency medical consultants, Dr. Mohanty and Dr. Auerbach, opined that the claimant had no manipulative limitation.  Tr. at pp. 70, 87.  However, the consultative examiner, Dr. Figueroa, opined that Plaintiff would have severe limitations.  Tr. at p. 427.

Since the RFC is "what an individual can still do despite . . . her limitations," this Court is hesitant to accept the unsupported quantification of Plaintiff's reaching, handling, and fingering limitations.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted).  Furthermore, this Court is unable to "glean the rationale for the ALJ's decision."  *Monguer v. Heckler*, 722 F.2d at 1040.  The ALJ references Plaintiff's possible sensory deficit in the median nerve distribution, moderate left and right carpal tunnel syndrome, and complaints of hand pain with numbness and tingling.  Tr. at p. 23.  Immediately following discussion of these symptoms, the ALJ "estimates" Plaintiff's ability to reach, handle, and finger during 50% of the workday.  This ALJ's decision includes no rationale for the determination and is unsupported by any of the above cited medical opinions.  As Plaintiff points out, there is potentially a significant difference between no limitation and a severe limitation.  *See Beth Marie N. v. Comm'r of Soc. Sec.*, 2023 WL 6065309, at * 5 (N.D.N.Y. Aug. 9, 2023).  Without an explanation of how the ALJ arrived at this determination, it appears that he "jumped to conclusions that were not adequately supported by the consultant reports before [him]."  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

Plaintiff also alleges that the ALJ erred because he did not adequately explain the supportability and consistency factors. "The revised regulations for evaluating opinion evidence place substantial emphasis on both supportability and consistency and require the ALJ to explain the analysis of each of those factors. *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 621 (S.D.N.Y. 2022) (citing 20 C.F.R. § 404.1520c(b)(2)). "To analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)). The persuasiveness of a medical opinion from a medical source or prior administrative finding depends on its relevancy to the objective medical evidence and the source's supporting explanations. 20 C.F.R. § 404.1520c(c)(1). "On the other hand, to analyze consistency, the ALJ must conduct 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d at 30 (quoting *Vellone v. Saul*, 2021 WL 319354, at *6). That analysis of the record is not sufficiently detailed in the ALJ's decision.

An ALJ's failure to explain the supportability and consistency factors when assessing the persuasiveness of a medical opinion does not automatically warrant remand. *Wanda N. v. Comm'r of Soc. Sec.*, 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022). If the ALJ's "consideration of the relevant factors can be gleaned from the

ALJ's decision as a whole," remand is not necessary. *John L. M. v. Kijakazi*, 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022).

Here, the ALJ relied on the medical opinions of Dr. Figueroa, Dr. Mohanty, and Dr. Auerbach for his assessment of Plaintiff's physical limitations. Tr. at pp. 24-25. In discussing each of these medical opinions, the ALJ's decision lacks a sufficient explanation from which this Court can glean his consideration of the relevant factors.

Beginning with the ALJ's discussion of Dr. Figueroa's opinion, the ALJ indicated that he found the opinion only partially persuasive. Tr. at p. 24. However, the only indication of why he found this opinion only partially persuasive is Dr. Figueroa's failure to "qualify the degree to which the claimant is limited from performing these activities" in vocationally specific terms. Tr. at 24. After referencing several physical exam findings that Dr. Figueroa made, the ALJ stated that "this examination, which is consistent with the claimant's orthopedic treatment records, does suggest some degree of limitation in the upper extremities, so the resulting opinion is partially persuasive." Tr. at p. 24. The ALJ did discuss this opinion's consistency with the Plaintiff's medical record, and it is possible to see how the ALJ was persuaded by the doctor's findings that supported the opinion.

However, the ALJ's only explanation as to why that opinion was only partially persuasive was its lack of clarity as to Plaintiff's degree of physical limitation. Tr. at p. 24. The ALJ's discussion of this opinion ends with: "the degree of limitations has been incorporated in the RFC set forth below." Tr. at p. 24. The ALJ failed to explain how

13

the opinion simultaneously lost credibility due to vagueness while at the same time he somehow qualified that degree of limitation and "incorporated it" into the RFC. This failure to "explain the link between the RFC assessment and the record evidence" is a basis for remand. *See Rhiannon W. v. Comm'r of Soc. Sec.*, 2023 WL 6118267, at *6 (W.D.N.Y. Sept. 19, 2023) (citation omitted). Further, the ALJ's reasoning for finding Dr. Figueroa's opinion only partially persuasive is conclusory, without sufficient discussion of supportability and consistency, which is also a basis for remand. *See Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022).

The ALJ's evaluation of the two State agency medical consultant opinions also does not provide a sufficient explanation of his consideration of the supportability and consistency factors. The ALJ found both opinions to be "generally persuasive." Tr. at p. 25. Both Dr. Mohanty and Dr. Auerbach opined that Plaintiff could perform light work with some additional limitations when climbing, stooping, kneeling, crouching, crawling, and balancing. Tr. at p. 24. The ALJ provided no explanation as to how either of these consultant's "supported and explained their opinions." *Vellone v. Saul*, 2021 WL 319354, at *6. To that extent, the ALJ acknowledges that neither State agency examiner was able to consider six additional sets of medical records submitted by Plaintiff after their assessments. Tr. at p. 25. The ALJ's failure to explain the supportability of these opinions is especially troubling because he relied on their RFC assessments in making his RFC determination. Tr. at p. 25.

14

These two opinions are clearly consistent with each other. However, the ALJ provides no explanation about how either of these opinions are consistent with the record as a whole or supported by their objective medical findings. As Plaintiff points out:

> Neither doctor provided supporting explanations that articulated the relevance of the objective medical evidence cited in the PAMF. For example, in the Reconsideration denial explanation, Dr. Auerbach summarizes the 05/13/2021 treatment note by Dr. Jeffry Arliss, which included positive objective findings and positive radiology findings. The Plaintiff's subjective complaints of numbness and tingling are mentioned in both Dr. Arliss's note and in the 02/23/2021 consultative exam that Dr. Auerbach also cites. . . . Yet Dr. Auerbach offered no explanation for concluding the Plaintiff had zero manipulative limitations.

Pl.'s Mem. of Law at pp. 18-19.

Here, absent an explanation of the supportability of the opinions of Dr. Auerbach, and Dr. Mohanty, and how they are consistent with the record as a whole, this Court cannot discern how and why the ALJ found these opinions more persuasive than Dr. Figueroa's, which opined more extreme physical limitations. There are several issues with the ALJ's assessment of the medical opinions he relied upon which warrant remand. First, the ALJ's conclusory analysis of each of the medical opinions "precludes the Court from undertaking meaningful review" of these medical opinions; therefore "remand is . . . required on this basis." *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d at 9. The ALJ also does not point to any specific evidence in the record that supports the findings the state agency consultants made over the findings of Dr. Figueroa. *See Raymond M. v. Comm'r of Soc. Sec.*, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021).

15

Likewise, the ALJ provides no analysis of how any of the above doctors supported their own findings, which precludes an understanding of how the ALJ gave more weight to Dr. Mohanty and Dr. Auerbach's opinions.

"However, the Court need not remand the case if the ALJ only committed harmless error, i.e., where the 'application of the correct legal principles to the record could lead only to the same conclusion.'" *Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 344-45 (S.D.N.Y. 2022) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)). Where the record contains medical opinions which opine limitations that could have led the ALJ to a finding of disability, the ALJ's failure to explain the persuasiveness of those opinions is not harmless error. *See Navedo v. Kijakazi*, 616 F. Supp. 3d at 352. A review of the record and application of the correct legal principles does not lead this Court to believe that the same conclusion the ALJ reached is inevitable. *Id.* at 344-45. Dr. Figueroa's opinion established greater limitations than the opinions of Dr. Mohanty and Dr. Auerbach. While it is possible that the ALJ will arrive at the same conclusion, it is also possible that Dr. Figueroa's opinion could establish limitations severe enough to alter the ALJ's RFC determination and lead to a finding that Plaintiff is disabled. Since this Court believes that a proper evaluation of Dr. Figueroa's opinion "could impact the ALJ's . . . RFC determination, the Court . . . concludes that remand is necessary." *Johnathon W. v. Saul*, 2021 WL 1163632, at *7 (N.D.N.Y. Mar. 26, 2021).

## C. Plaintiff's Remaining Arguments

"Finding remand necessary for the reasons explained above, the Court need not and does not reach Plaintiff's remaining arguments. . . ." *Rowe v. Berryhill*, 2018 WL 4233702, at *5 (W.D.N.Y. Sept. 6, 2018).  Those arguments include Plaintiff's claim that the neither the ALJ nor the medical opinions he relied upon adequately considered Plaintiff's symptoms associated with myofascial pain syndrome, the claim that the ALJ improperly treated Dr. Tandon's consultation notes as a functional assessment, and the claim that the step four vocational finding is not supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that the matter is **REMANDED** pursuant to sentence four; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated: July 22, 2024
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

18